In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-2735

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ISAIAH J. GREGORY,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:07CR30099-001-DRH—**David R. Herndon**, *Chief Judge.*

ARGUED DECEMBER 7, 2009—DECIDED JANUARY 15, 2010

Before CUDAHY, WOOD, and EVANS, *Circuit Judges.*

WOOD, *Circuit Judge.* Isaiah Gregory is still a young man, but he has a lengthy enough criminal record to have earned sentencing as a career offender for his latest drug crimes. And the sentence was a stiff one: 327 months' imprisonment, which represented the high end of his advisory sentencing guideline range. On appeal, Gregory has complained only about that sentence. His principal assertion is that he should not have

been characterized as a career offender; secondarily, he argues that his sentence was so extreme as to be unreasonable for purposes of 18 U.S.C. § 3553(a). While we acknowledge the severity of the sentence, we see no error in the district court's decisions that led to it. We therefore affirm.

I

Gregory's current problems with the law arise out of his distribution of crack and powder cocaine in the cities of Madison and Venice, Illinois, from approximately January to June 2007. The government had a solid case against him: it used a confidential source to purchase the drugs from Gregory; the purchases were captured on video and audio recordings; and incriminating evidence was seized pursuant to a search warrant for a co-conspirator's apartment. In addition, Gregory was interviewed twice by law enforcement agents, and he made admissions about his drug dealings.

On February 22, 2008, Gregory was indicted on a number of drug-related counts, including conspiracy to distribute and possess with intent to distribute cocaine, distribution of crack cocaine within 1,000 feet of a public housing facility, and several substantive distribution counts. See 21 U.S.C. §§ 841(a)(1), 846, 860. Approximately a year later, on March 11, 2009, he entered an open plea of guilty to all charges. As usual, the Probation Office drafted a Presentence Investigation Report ("PSR") in preparation for sentencing. The writer of the report concluded that Gregory was a career offender, for

purposes of U.S.S.G. § 4B1.1. The PSR identified two prior convictions that counted for this purpose: first, one for aggravated discharge of a firearm, and second, one for robbery (of just $30). Gregory concedes that the former conviction was properly included, because he committed that crime at the age of 19 and he does not assert that it failed to qualify as a crime of violence. He objected, however, to the inclusion of the robbery conviction as a predicate offense, because he was only 15 years old when he committed that crime, and he served his sentence in a juvenile facility.

In response, the government pointed out that Gregory had been tried as an adult for the robbery and that the certified copy of the conviction confirms that the final disposition was an adult conviction, not a juvenile one. The sentence was for six years, and thus easily met the requirement of U.S.S.G. § 4B1.2(a) that the offense must be punishable by a term of imprisonment exceeding one year. The government also pointed out that the criminal history section of the Guidelines addresses the situation of someone who committed his offense before age 18 and was convicted as an adult. See U.S.S.G. § 4A1.2(d). If such a person received a sentence exceeding one year and one month, then three criminal history points must be added. The career offender guideline requires reference to § 4A1.2 for the purpose of counting convictions. § 4B1.2 cmt. n.3.

The district court ruled in the government's favor. The robbery conviction, it observed, was handled in the adult division of the criminal court, even though Gregory

was only 16 years old at the time. Application Note 7 of § 4A1.2 did not require a different result. That note expands on the criminal history guideline for those who committed their offense before their eighteenth birthday. It states that "for offenses committed prior to age eighteen, only those that resulted in adult sentences of imprisonment exceeding one year and one month, or resulted in imposition of an adult or juvenile sentence or release from confinement on that sentence within five years of the defendant's commencement of the instant offense are counted." § 4A1.2 cmt. n.7. The court interpreted the five-year rule appearing at the end of that sentence as applying only to adult convictions where the sentence imposed was less than a year and a month or a juvenile sentence. Because Gregory was sentenced to six years in prison, the former language did not help him. The court rejected Gregory's argument that his was a "juvenile sentence" because it was served in a juvenile facility.

With those objections behind it, the court classified Gregory as a career offender, computed the applicable guideline range as 262-327 months, and sentenced Gregory to the high end of the range. (Had Gregory not been classified as a career offender, his guideline range would have been much lower, though the parties contest by how much. Both the government and Gregory filed supplemental briefs at our request that addressed this question. The government suggests that Gregory would have had an offense level of 29 and a criminal history category of IV, for a range of 121-151 months. Gregory concedes that his offense level would

have been 29, but he asserts that without the juvenile conviction his criminal history category would have been III, and thus his guideline range would have been 120-135 months, reflecting the statutory minimum of 10 years. We need not resolve this dispute, since we agree with the district court's decision to use the career offender guideline.) The court explained that Gregory had a "very violent background," that "he is a career criminal not only by guideline classification, but in fact," that he habitually was involved with firearm displays and discharges, and that "he is a very dangerous person to the community." In order to provide adequate deterrence, protect the public, and respond to a person who thus far had "completely disregard[ed] law, authority, and the right of other people to live along with him in a law-abiding way," the court concluded that the high-end sentence was appropriate.

## II

A person qualifies as a career offender under the Guidelines if "(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). The only question before us relates to the third requirement: if Gregory's prior robbery conviction counts as a crime of violence, then he was properly classified as a career offender; if not, he is entitled to resentencing.

The issue that Gregory has presented has more substance to it than even he may have realized. It has split the circuits, and thus we must decide which side we should endorse. The Fourth Circuit has sided with Gregory, see *United States v. Mason,* 284 F.3d 555, 559-62 (4th Cir. 2002), while the Third, Ninth, and Eleventh Circuits have taken the government's position, see *United States v. Moorer,* 383 F.3d 164, 167-69 (3d Cir. 2004) (expressly declining to follow the Fourth Circuit); *United States v. Pinion,* 4 F.3d 941, 943-45 (11th Cir. 1993); and *United States v. Carrillo,* 991 F.2d 590, 593-94 (9th Cir. 1993). It appears that the Second Circuit has come close to the government's position as well. See *United States v. Driskell,* 277 F.3d 150, 156-58 (2d Cir. 2002). The difference of opinion centers on the question whether, in addition to distinguishing between adult and juvenile *convictions,* the Guidelines also call for distinguishing between adult and juvenile *sentences,* depending on whether the sentence is imposed pursuant to the adult or juvenile criminal code. The Fourth Circuit concluded that the Sentencing Commission did adopt the latter refinement. The word "imprisonment," it said, applies only to adult convictions, whereas the word "confinement" applies to both juvenile and adult dispositions. *Mason*, 284 F.3d at 560. A "sentence of imprisonment" for purposes of § 4A1.2(d)(1) must refer, the court reasoned, only to sentences doled out under the state's adult sentencing laws. *Id.*

The remaining courts have not been persuaded by this line of argument. In *Moorer,* for example, the Third Circuit argued that to read Application Note 7 to

§ 4A1.2(d) to require the juvenile defendant be sentenced as an adult would be inconsistent with note 1 to § 4B1.2, which "clearly defines a 'prior felony conviction' purely in terms of the kind of conviction the defendant had, not the kind of sentence." 383 F.3d at 168. Accord, *Carrillo,* 991 F.2d at 594. The Ninth Circuit adds that the Fourth Circuit's approach reads too much into note 7. *Id.* at 593-94. It found that the phrase "adult sentences of imprisonment" was meant only to serve as a shorthand reference to the phrase in § 4A1.2(d)(1) describing "those defendants who were convicted as an adult and received a sentence of imprisonment." *Id.* Both the Ninth and Eleventh Circuits also observe that the Fourth Circuit position cuts against the policy animating the career offender guidelines. *Id.* at 594-95; *Pinion*, 4 F.3d at 945. Minors convicted as adults are sometimes (perhaps often) sentenced more leniently under juvenile criminal codes, in the hopes that they might be rehabilitated. If they persist in a life of crime, however, the career offender guidelines call for a lengthier sentence. *Carrillo*, 991 F.2d at 594-95; *Pinion*, 4 F.3d at 945.

Like the majority of our colleagues, we are not persuaded by the Fourth Circuit's approach. We find it difficult to believe that the Commission would have made such an important point about juveniles convicted as adults using such subtle linguistic signals. If the Commission had wanted to draw such a sharp distinction between juveniles with adult convictions sentenced as adults and those sentenced as juveniles, it would have done so more clearly. We conclude, therefore, that the critical question is whether the juvenile was convicted as an adult, not how he was sentenced.

That disposes of Gregory's principal claim. He was old enough to be moved over to the adult courts at the time he committed his robbery, and that is what the state decided to do. He was sentenced to six years as an adult, and only then was he moved to the juvenile detention facility. People serve their sentences in many different places: some are moved to private prisons; some wind up spending time in the facilities of another state or the federal government; some are lodged in county jails. The location is unimportant. What does matter is the nature of the underlying conviction. Gregory could not have received a sentence for a definite term of six years if the state had been proceeding under the Juveniles Court Act, § 5-750(3); as the conviction reflects, he received a sentence for a class 2 felony, pursuant to 730 ILCS 5/5-4.5-35(a).

## III

The only question that remains is whether Gregory's sentence of 327 months is so long that we must find it substantively unreasonable. In trying to persuade us that it is, Gregory stresses the fact that the two under-lying felonies that supported his career criminal status were far from the worst offenses one sees. The robbery he committed at the age of 15 involved taking $30 from someone by force; although the sentence was for six years, he served only two years for it. Gregory com-mitted the other offense when he was 19; the crime was the aggravated discharge of a firearm. Nevertheless, these were both crimes of violence as the Guidelines

define them. We grant that Gregory's status as a career criminal has had the effect here of more than doubling his guidelines range, from 120-135 (as he sees it) up to 262-327. The district court recognized that it had the discretion to sentence Gregory to a shorter term. It chose not to do so, and explained why it thought that Gregory's record taken as a whole required the 327-month sentence. The court was well aware that Gregory was young at the time he committed the predicate offenses, and was still just in his mid-20s when he found himself facing these federal charges.

We see no principled way in which we could find that the court's choice of sentence—falling as it did within the properly computed guideline range—was so poorly supported by the record that we should brand it "unreasonable." We therefore AFFIRM the judgment of the district court.